IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:08CR304

        Plaintiff

v.  ORDER

Michael Dickerson,

        Defendant

This is a criminal case in which the defendant Michael Dickerson and several others were indicted on drug charges. Pending is the defendant's motion to suppress evidence derived from court-ordered electronic surveillance. [Doc. 265].

The defendant's principal contention is that the government failed to satisfy the "necessity" or "exhaustion" requirements of 18 U.S.C. § 2518(1)(c).[1] That section requires that, when seeking a court order to conduct surreptitious electronic surveillance, the government must show either that conventional methods have not accomplished the objectives of its investigation or such methods would either not accomplish those objectives or be too dangerous to undertake.

---

[1] The pending motion raises two additional issues: 1) the defendant Dickerson's standing; and 2) his attorney's request to delay consideration of the motion until he has an opportunity to question the Case Agent about his use of alternative techniques and reasons for not attempting others not employed during the investigation.

The defendant contends that conventional techniques had either accomplished or could have accomplished the objectives of the investigation because:

- The F.B.I. had an informant who had been recording his oral and telephone conversations with the defendant;[2]

- was spending time daily with the defendant and reporting about those meetings regularly with him;

- had executed a search warrant on premises occupied by another Dickerson, was spending time every day with the defendant;

- shortly before seeking the surveillance order naming the defendant, the F.B.I. had "turned" another informant, whom it believed was the defendant's boss;

- additional individuals were in a position to provide information about the defendant's drug activities.

For the reasons that follow, I conclude that these contentions – of which I was well aware from having issued prior orders and periodically reviewing the progress of the surveillance – are insufficient to invalidate the government's showing and my finding that issuance of the order complied with all Title III requirements. Thus, for the reasons that follow, the motion shall be denied.

**Discussion**

**1. Standing**

The defendant only has standing as to conversations in which he participated, or which occurred over a telephone belonging to him: the fact that he was named in orders, but not intercepted does not give rise to standing. *U.S. v. Salemme*, 91 F. Supp. 2d 141, 381 (D. Mass. 1999), *rev'd in part on other grounds*, 225 F.3d 78 (1st Cir. 2000).

---

[2] The F.B.I. had "turned" the informant after a search warrant discovered drugs at his residence.

The government intercepted the defendant's phone conversations between November 1, 2007, and November 13, 2007. His standing to challenge the evidence thereby obtained is limited to interceptions occurring pursuant to the application filed and order issued on November 1, 2007. He has no standing to challenge evidence derived from interceptions occurring as a result of other orders in the sequence that included the November 1, 2007, order.

## 2. Request to Postpone to Enable Examination of Case Agent

The request of the defendant's attorney to postpone considering the instant motion until he has had a chance to question the Case Agent about his consideration and use of alternative methods is, in effect, a backdoor *Franks* motion. Aside from its untimeliness,[3] the request fails to meet the requirements of *Franks v. Delaware*, 438 U.S. 154 (1978), for a hearing.

That case allows a hearing to peer behind the allegations of an affidavit where the defendant contends, as implicitly he does here, that allegations were false "only upon a substantial preliminary showing" of falsity [or, in this case, insufficiency of the § 2518(1)(c) statements]. *See, e.g., U.S. v. Jackson*, 65 F.3d 631, at 645–46 (7th Cir. 1995), *vacated in part on reh'g on other grounds*, 74 F.3d 751 (7th Cir. 1996), *cert. granted, judgment vacated on other grounds*, 516 U.S. 1156 (1996); *U.S. v. Leisure*, 844 F.2d 1347, 1357 (8th Cir. 1988); *U.S. v. Mastroianni*, 749 F.2d 900, 909 (1st Cir. 1984). No suggestion, much less a showing of falsity having been made, the defendant's attorney is not entitled to a postponement of consideration of his motion until the Case Agent testifies.

## 3. Compliance With Necessity/Exhaustion Requirement

---

[3] On which I do not base denial of the request.

The defendant's response contends that the necessity/exhaustion requirement was not met because the investigation of the defendant and his confederates had not come to a "standstill." [Doc. 265, at 3]. That is not the standard for determining whether other investigatory means have or could accomplish the investigation's purposes. Rather, the government need not prove that it has exhausted every conceivable conventional investigative method. *U.S. v. Alfaro*, 838 F.2d 158, 163 (6th Cir. 1988). What matters is that the government inform "the issuing judge of the difficulties involved in the use of conventional techniques." *U.S. v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002).

Section 2518(1)(c) seeks to ensure electronic surveillance, which is always secretive and exceptionally intrusive, especially when, as in this case, it is prolonged, is "not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *U.S. v. Kahn*, 415 U.S. 143, 153 n.12 (1974). Section 2518(1)(c) thus requires law enforcement officials to "give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigative belief that such non-wiretap techniques have been or will likely be inadequate." *U.S. v. Lambert*, 771 F.2d 83, 91 (6th Cir.1985).

This standard was met in the affidavit at issue here.

The touchstone for evaluating compliance with § 2518(1)(c) is the purpose of the investigation. If the purpose simply is to gain evidence against a single individual, and, perhaps, to find him in possession of contraband, surveillance, at least in a drug case, would almost never be justified. Too many other, more direct and less intrusive means exist to gain evidence as to one person.

But in this case, as in most, if not all cases involving federal drug investigations, the government's purpose was considerably more than simply apprehending a single individual. Rather,

4

as is also commonplace where the objective is to uproot and exterminate a drug distribution organization, the agents wanted to learn who was involved, what they were doing, not just with themselves, but with others, how they were doing it and where they were doing it. In addition, the agents desired to connect drugs and individuals, to improve the likelihood of a successful prosecution.

Where that is all – in other words, where the investigation focused solely on those involved locally, so that they could be apprehended and convicted – a heightened showing of necessity might arguably be needed.[4]

But the focus and objectives in this case were not limited to the Toledo area. Of greatest importance was attempting to ascertain who else was working elsewhere with the targets to provide drugs to them for distribution locally. This is the objective in most, if not all federal drug cases involving Title III applications and orders. Indeed, the federal government alone has the resources and interstate jurisdiction to engage in coordinated, multi-state investigations of such interstate and international activity.

Here, therefore, the agents did not want simply to hear the defendant talking to others about his activities, involvement of others locally, and where himself might keep his drug supply and store drug-trafficking proceeds. Rather, the agents wanted to try to learn who else he might be talking to and working with in the alleged drug endeavors. Even though they may have known some of that information from pen registers and similar techniques, they would not know who was on the other end of the line, or hear them speaking about the crimes being investigated.

---

[4] Though the location of places locally where drugs are stored and proceeds are kept appears to be a constant problem that frequently is not solved by conventional techniques.

Here, the objectives of the investigation, though commonplace and conventional, and a recurrent hallmark of Title III drug applications, were, nonetheless, not directed narrowly. Instead, the agents wanted to find out where and how drugs were getting into the targets' hands, who was agreeing to send them and arranging for them to get here, and when and how they would be coming.

None of this information, much less the evidence needed to convict persons unknown, but clearly involved, had been developed through the extensive conventional means employed prior to the surveillance. Nor would continued use of those means accomplish those objectives. If the agents were to succeed in uncovering, arresting and convicting suppliers and other participants, surveillance was the only viable alternative.

The defendant was a target, but he was not the object of the investigation. Or, at least, far from the sole object. Even though evidence may well have been developed to convict him, that does not preclude directing electronic surveillance against him. Had he been the only person whom the agents wanted to apprehend and convict, his contentions about § 2518(1)(c) might be well-taken. But clearly he was not the only person in that position.

This is so, even if the ultimate objectives were not, or appear not to have been accomplished. Whether the surveillance illuminated pathways to others and brought them to justice is not what matters. What matters is that the government was undertaking a *bona fide* effort to respond to drug-dealing in the Toledo area. To be successful, that effort had to go beyond any individual dealer and seek to find out who else was involved – especially at the level of out-of-state supplier – and what role they were playing. In addition, learning the means, manner and methods of all the participants – especially those from elsewhere – and catching them in possession of drugs, other contraband or drug-related proceeds was also of great importance.

**Conclusion**

For the foregoing reasons, I find that the purposes of the investigation justified the agents in turning to electronic surveillance when they did so. I also find that Agent Fulmer's extensive discussion of the need for surveillance, as contained in twenty-seven pages of his affidavit, showed clearly that the objectives were unattainable through conventional means. This was far from the first step; much had been tried, and though much had been learned, much more was reasonably desired and needed.

It is, therefore,

ORDERED THAT the motion of the defendant Michael Dickerson to suppress evidence derived from electronic surveillance be, and the same hereby is overruled.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge